USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 97-1396 IN RE: MARISOL MARTINEZ-CATALA, ET AL., Petitioners. ____________________ ON PETITION FOR WRIT OF MANDAMUS ____________________ Before Boudin and Lynch, Circuit Judges, ______________ and Keeton,* District Judge. ______________ ____________________ Carlos Del Valle Cruz for petitioners. _____________________ Arlene De La Matta with whom Jose R. Gaztambide was on memorandum __________________ __________________ in support of opposition to application for writ of mandamus and addendum for respondents Honorable Maria D. Guzman Cardona, et al. ____________________ November 12, 1997 ____________________  ____________________ *Of the District of Massachusetts, sitting by designation. BOUDIN, Circuit Judge. This case comes to us on ______________ petition for writ of mandamus directing the district judge to recuse himself in this case. The district judge denied the motion to recuse without an evidentiary hearing or any detailed submission by the opposing parties. Thus, the raw facts set forth below, and assumed to be true for purposes of this opinion, are largely drawn from the petition for mandamus and related filings by petitioners.  I. BACKGROUND After the 1992 municipal elections in Florida, Puerto Rico, the candidate for mayor of Florida affiliated with the New Progressive Party unseated the incumbent mayor who was affiliated with the Popular Democratic Party. According to the complaint later filed by petitioners, who are plaintiffs in the district court, all 14 of them were dismissed or demoted in early January 1993. Some of the plaintiffs had served as assistants to the mayor and others had been employees of Florida's elder community center.  The suit was brought as a civil rights action under 42 U.S.C. 1983. Plaintiffs charged that their firing violated their constitutional free speech rights under Elrod v. Burns, _____ _____ 427 U.S. 347 (1976), Branti v. Finkel, 445 U.S. 507 (1980), ______ ______ and Rutan v. Republican Party, 497 U.S. 62 (1990). These _____ _________________ cases limit, although they do not wholly eliminate, the ability of a new administration to dismiss or demote -2- -2- employees of the old administration on account of party affiliation. Plaintiffs sought damages and reinstatement. In November 1995, a motion for summary judgment was filed on behalf of defendants, who included the new mayor, the municipality and others. The summary judgment motion urged that the former mayoral assistants had confidential positions that excepted them from the limit on political firings and also asserted that in other cases, the assistants had been hired illegally. Defendants said that the former workers at the elder community center had been discharged due to lack of funds. On June 13, 1996, in an effort to reach a settlement, the district judge met in chambers with counsel from both sides, with the defendant mayor, and with Florida's interim director of human resources. Then the judge, apparently without objection, met separately with both sides. Plaintiffs' counsel was Carlos Del Valle Cruz; defense counsel included Jose Gaztambide, who at some earlier time had served as a law clerk to the district judge.  Following their separate meetings with the judge, counsel for both sides met privately to discuss settlement. Del Valle later filed an unsworn statement, made under penalty of perjury, describing his meeting with Gaztambide and with Luis Plaza, another defense attorney. Crucial language from the unsworn statement follows: -3- -3- In said conference, they [the defense attorneys] made a settlement offer on the basis on (sic) of the Court's prospective ruling on their [defense] motion for summary judgment. Counsel Gaztambide stated that the Court would be dismissing the case as to five (5) of the plaintiffs, was yet unsure of his decision as to three (3) of the plaintiffs, and would deny the motion for summary judgment as to the remaining six (6) plaintiffs. Defense counsel then reviewed an earlier letter containing settlement offers for each plaintiff. The statement continues: "Next to the name of each plaintiff, counsel Gaztambide made a downward slant for all those cases which the Court would be dismissing . . . an upward slant next to the names of the cases the Court was yet unsure of . . . and a circle next to the names of those cases [in which] the Court would deny the motion for summary judgment . . . ." Del Valle objected that defense counsel had information about "a prospective dismissal" of certain of the cases. All three lawyers returned to the judge who continued to urge settlement of the case. When defense counsel Plaza said that Del Valle had an ethical obligation to report the settlement offers to his clients, Del Valle said that his clients were in court "because they believed in the Constitution and their right to be made whole." According to Del Valle's statement, the district judge then intervened "to express that the undersigned should `forget the Constitution,' because several of my clients were `political sweet potatoes' that cared more about having some -4- -4- money in their pockets than about their Constitutional rights." The judge then proposed a settlement figure of approximately $200,000 that "counsel agreed to recommend to their clients." Del Valle did meet with his clients, but the upshot was a motion by Del Valle, accompanied by the statement just described, requesting the district judge to recuse himself pursuant to 28 U.S.C. 144, 455(a) and (b). The motion for recusal was filed on June 17, 1996. When no action had been taken on the motion after eight months, plaintiffs, on February 26, 1997, filed a motion requesting a ruling. When again there was no response, plaintiffs on April 19, 1997, filed a petition for writ of mandamus in this court. Ten days later, on April 29, 1997, the district court issued an opinion and order denying the motion for recusal.  In the 28-page opinion and order, the district court concluded that disqualification was not required under either section 144 or section 455. The district judge stated that he had, "as is customary, discussed separately with each party's counsel the perceived strengths and weaknesses of the case . . . ." The opinion continued: "The undersigned did not tell either party definitively what his decision would be--he merely gave both parties his preliminary impression of the possibilities for success as to each claim." This decision mooted plaintiffs' request to us for an order directing the district judge to rule. But the mandamus -5- -5- petition also requested that this court order the district judge to recuse himself. Accordingly, on May 23, 1997, this court asked the parties to file memoranda addressing the merits of the recusal claims and the overhanging question whether review by mandamus was warranted. Del Valle complied; defense counsel relied largely on the district judge's decision. On June 6, 1997, the district court issued an opinion and partial judgment disposing of the pending motions for summary judgment filed by the defendants. The court dismissed certain claims and, as to others, scheduled an evidentiary hearing for later in June and a trial date in August 1997. At the request of plaintiffs, this court then granted a stay of further proceedings in the district court. II. DISCUSSION  In this case, there is no final judgment appealable as of right. Ordinarily, a district judge's refusal to recuse is reviewable only on appeal of a final judgment; the collateral order doctrine does not apply. Nevertheless, in unusual situations, interim review of such a refusal is available through writ of mandamus. See In re Cargill, Inc., ___ ___________________ 66 F.3d 1256, 1260 (1st Cir. 1995), cert. denied, 116 S. Ct. ____________ 1545 (1996) (collecting cases). The usual first requirement for mandamus in a recusal matter is that the party seeking the writ show a "clear and -6- -6- indisputable" entitlement to relief. In re United States, ____________________ 666 F.2d 690, 695 (1st Cir. 1981); see 13A C. Wright, A. ___ Miller & E. Cooper, Federal Practice and Procedure 3553, at ______________________________ 661 (2d ed. 1984). Interlocutory review, after all, interferes with the ordinary processes of trial and appeal; and absent interlocutory review, many issues wash out along the way. But over the years, appeals courts have held that given a clear error by the district judge in refusing to _____ recuse, a stronger argument exists for immediate review by mandamus. Mandamus is a discretionary writ and, even where the merits clearly favor the petitioner, relief may be withheld for lack of irreparable injury or based on a balance of equities. These are malleable concepts and often matters of degree. Some opinions suggest that a clear entitlement to _____ recusal may itself warrant immediate relief, absent an equitable bar, because public confidence is enhanced where a clearly disqualified judge is removed swiftly. See, e.g., _________ In re United States, 666 F.2d at 694. ____________ ______ In all events, in recusal cases, mandamus is almost always withheld--we do not say always--unless the petitioner demonstrates that it is "clearly" entitled to relief. See ___ Cargill, 66 F.3d at 1262. Here, the plaintiffs have invoked _______ two separate bases for disqualification, sections 144 and -7- -7- 455, whose procedural incidents differ widely. We consider them separately and in order.  Section 144. This provision begins with a core one- ____________ sentence paragraph: Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding. A second paragraph sets forth a timeliness requirement (not here in dispute), provides that the party can only file one such affidavit in any case, and requires a certificate of counsel of record that the affidavit is made in good faith. Section 144 is unusual because it requires that the district judge accept the affidavit as true even though it may contain averments that are false and may be known to be so to the judge. See United States v. Kelley, 712 F.2d 884, ___ ______________ ______ 889 (1st Cir. 1983). However, penalties for perjury and the certificate of counsel tend to discourage outright falsehood. And the possibility remains, although not developed in the statute, that the transferee judge might hold a hearing, conclude that the affidavit was false and transfer the action back to the original judge. Nevertheless, courts have responded to the draconian procedure--automatic transfer based solely on one side's affidavit--by insisting on a firm showing in the affidavit -8- -8- that the judge does have a personal bias or prejudice toward a party, and also by insisting on strict compliance with the procedural requirements of the section.1 And, while there are various bases at law for recusal, the only one governed by section 144 and subject to its procedural advantages for the recusing party are "personal bias or prejudice."  We start with procedural issues. Section 144's second paragraph requires the affidavit of "a party" setting forth "the facts and the reasons for the belief that bias or prejudice exists" and a separate "certificate of counsel of record stating that it [the affidavit] is made in good faith." Here, there was neither an affidavit of a party nor a certificate of counsel--only a single unsworn statement of counsel setting forth facts under penalty of perjury. The papers are thus doubly defective. Still, an unsworn statement under penalty of perjury has the same effect as an affidavit. 28 U.S.C. 1746. The missing certificate of counsel may also be redundant (although it still should have been supplied) where, as here, the motion and unsworn statement are both signed by counsel, making counsel subject to the good faith strictures of Fed. R. Civ. P. 11. One might be more concerned about the lack of  ____________________ 1See, e.g., Glass v. Pfeffer, 849 F.2d 1261, 1267 (10th __________ _____ _______ Cir. 1988); Walberg v. Israel, 766 F.2d 1071, 1077 (7th _______ ______ Cir.), cert. denied, 474 U.S. 1013 (1985); United States v. ____________ _____________ Womack, 454 F.2d 1337, 1341 (5th Cir. 1972).  ______ -9- -9- any affidavit or statement from "a party," especially in view of the tradition of construing section 144 strictly in light of its drastic consequences. But probably the drafters of the statute expected that "a party" would possess the necessary knowledge showing (for example) personal hostility of the judge against that party. In this case, plaintiffs' counsel was much closer than his clients to being a firsthand witness to the events. It seems to us to satisfy the underlying purpose of the recusal statute to allow Del Valle to make the necessary filing rather than to insist that the plaintiffs themselves repeat the same facts on a hearsay basis. Starting with defense counsel's alleged inside knowledge of the judge's intentions, the problem is not one of ex parte ________ contacts as such; absent objection, separate discussions in the context of settlement agreements are common occurrences. And, in pressing each side to take a reasonable view of its situation, judges often give the parties the court's impression of apparent strengths and weaknesses. There are dangers in this practice, of course, but clients are often well served by settlements, and settlements often result from realistic appraisals of strengths and weaknesses. Rather, the claim of bias or prejudice here rests primarily on the inference, drawn by plaintiffs' counsel, that the judge told defense counsel more or less definitively ____ -10- -10- how the judge planned to rule on the summary judgment motions and on the implication that the judge gave no similar information to plaintiffs' counsel. If so, this would obviously give one side a substantial advantage in negotiations. We will assume arguendo that such an ________ indiscretion could at least arguably be grounds for a reasonable inference of bias or prejudice toward someone (whether toward a party or counsel might require further information). Under section 144, recusal must be based upon the facts alleged in the affidavit, so we have to disregard the district judge's own later denial that he revealed how the motions were to be decided. See Kelly, 712 F.2d at 889. ___ _____ But, by the same token, automatic removal of the judge under that section requires averment of facts showing that the judge "has" a personal bias or prejudice, not that the judge might have such a bias or prejudice or that grounds exist for further inquiry. As explained below, "mights" and further inquiries can always be pursued under section 455--where, however, the affidavit itself can be challenged. The difficulty with Del Valle's unsworn statement is that it does not show that the district judge revealed his ___ intended disposition of any of the summary judgment motions to defense counsel. The statement does not even say that defense counsel made such a claim. Instead, the remarks -11- -11- attributed to defense counsel--the pertinent ones have been quoted in full above--show only that defense counsel sought to convey the impression that he knew how the judge would rule, while carefully refraining from explaining how he knew. The unsworn statement itself shows that both plaintiffs' counsel and defense counsel had come from separate settlement conferences where (in common experience) judges often discuss the strengths and weaknesses of the claims. There is nothing in the unsworn statement to indicate that defense counsel was doing more than making an intelligent prediction, perhaps puffing a bit to enhance his bargaining position. This does not prove that the judge revealed to defense counsel how the _____ judge intended to rule on the pending motions. We turn next to the judge's alleged statement that some of the plaintiffs were "political sweet potatoes." We understand this term to mean political hack, see Rodriguez- ___ __________ Garcia v. Davila, 904 F.2d 90, 100 n.10 (1st Cir. 1990), or ______ ______ as the district judge put it in another instance, "people appointed to more or less useless jobs as political favors," see Rodriguez-Garcia v. Davila, No. 87-1411, 1988 WL 124046, ___ ________________ ______ *2 (D.P.R. Nov. 9, 1988). Under section 144, the question again is whether such a reference shows personal bias or prejudice. Assuming that the statement does show a predisposition, there is no evidence that the statement was improper. A -12- -12- judge is ordinarily entitled to form a view of the parties that is favorable or unfavorable, so long as it derives from information in the case; there may be exceptions but they are "rare" indeed. See Liteky v. United States, 510 U.S. 540, ___ ______ _____________ 554 (1994). Here, the district judge had before him the summary judgment filing in which the defendants challenged the bona fides of various plaintiffs. There is no indication that the judge knew the individual plaintiffs from any context other than the current judicial proceedings. Judges constantly form personal opinions during proceedings. It may be wiser not to express such views, and almost always prudent to avoid epithets, but disqualification is almost never required where the judge's opinions are based on the proceedings. Inaccurate findings based on those opinions may lead to reversal on appeal but not to recusal. Whether the words used by the district judge suggest a lack of impartiality is a different question, properly raised under the objective standard of section 455 and addressed below. There is even less to the claim that the judge showed a personal bias or prejudice when he said, if he did say, that the plaintiffs should "forget the Constitution." However dramatic the phrase may sound in the abstract, in context it was here used as part of a perfectly permissible suggestion by the district judge, namely, that counsel ask his clients -13- -13- whether they were more interested in a monetary settlement than in an opportunity to express principle. Judges say something of the sort in many settlement conferences.  Section 455. In its present version section 455 is the ___________ more modern and complete recusal statute and applies to all federal judges. There is no threshold requirement of an affidavit or any other format for raising a recusal issue. In fact, the judge is expected to recuse sua sponte, where ___________ necessary, even if no party has requested it. Nor is there anything to prevent the party seeking recusal from trying to engage in discovery incident to a recusal motion, although the allowance of such discovery is within the sound discretion of the court. See, e.g., Cheeves v. Southern _________ _______ ________ Clays, Inc., 797 F. Supp. 1570, 1580 (M.D. Ga. 1992). ___________ On the other hand, under section 455, a judge is not compelled automatically to accept as true the allegations made by the party seeking recusal. To the extent that facts are in dispute, factual determinations are made by the judge whose recusal is in question, and the same judge also decides whether the facts trigger disqualification, subject always to review on appeal, normally for abuse of discretion. See, ____ e.g., Town of Norfolk v. United States Army Corps of ____ _________________ _______________________________ Engineers, 968 F.2d 1438, 1460 (1st Cir. 1992). _________ It might seem odd that recusal issues should be decided by the very judge whose recusal is in question. But there -14- -14- are other considerations at work, including a desire for expedition and a concern to discourage judge shopping. In addition, one of the grounds for recusal under section 455 is the far-reaching direction that the judge recuse himself or herself "in any proceeding in which his [or her] impartiality might reasonably be questioned." 28 U.S.C. 455(a). Thus, taken together, the provisions of section 455 tend to strike a reasonable balance. In our case, the plaintiffs have invoked both section 455(a) and section 455(b)(1), which repeats the bias and prejudice language of section 144. For present purposes, we focus on the impartiality language of section 455(a) because it covers the same ground and reaches even further. Section 455(a) is in no way limited to "personal" bias or prejudice "concerning a party" and--unlike sections 144 and 455(b)(1)-- does not require that bias or prejudice in fact be ________ established. United States v. Chantel, 902 F.2d 1018, 1023 _____________ _______ (1st Cir. 1990). Rather, section 455(a) requires recusal wherever the objective circumstances create an appearance of __________ partiality. This does not mean that required recusal can be based on an "unsupported, irrational, or highly tenuous speculation." In re United States, 666 F.2d at 694. It does ___________________ mean that where the appearance of partiality exists, recusal is required regardless of the judge's own inner conviction -15- -15- that he or she can decide the case fairly despite the circumstances. See Chantel, 902 F.2d at 1023. See also ___ _______ ________ Liteky, 510 U.S. at 548; Blizard v. Frechette, 601 F.2d 1217, ______ _______ _________ 1220 (1st Cir. 1979). With this gloss, we revisit plaintiffs' first and sharpest claim, namely, that the judge told the defense but not the plaintiffs how he planned to rule on the pending summary judgment motions. As we have said, section 455, unlike section 144, is not limited to facts alleged in an affidavit. But Del Valle's statement was itself insufficient to show that the judge made the alleged disclosure; and the only additional pertinent fact beyond the statement is the judge's denial that he did so, hardly of help to the ______ plaintiff. Plaintiffs now attack the judge's statement that he gave both sides a preliminary appraisal: Del Valle now claims in his mandamus memorandum that in the settlement conference with the judge he was told virtually nothing even about likely outcomes. But new assertions of fact by counsel in appellate briefs come too late, see Hurney v. Carver, 602 ___ ______ ______ F.2d 993, 996 (1st Cir. 1979); Renovitch v. Kaufman, 905 F.2d _________ _______ 1040, 1049 n.12 (7th Cir. 1990), and plaintiffs have made no effort to prove what defense counsel was told. Without _______ knowing both, any comparison is hopeless. -16- -16- We return now, under the standard of section 455(a), to the district court's alleged remark that some of the plaintiffs were "political sweet potatoes." As already noted, a judge is normally free to develop views from the record as the case proceeds, and there is no showing here that the judge's assessment came from any other source. Further, the judge's supposed comment--like his alleged admonition to "forget the Constitution"--was in context little more than a warning to plaintiffs' counsel, quite relevant to the settlement then being urged, that some of his clients might do better by compromise than at trial.  Two other assertions remain to be addressed. In his unsworn statement, plaintiffs' counsel referred to the fact that one of the defense counsel had once clerked for the judge, an issue unrelated to party bias or prejudice but _____ perhaps pertinent to appearance of partiality. And on appeal, plaintiffs' counsel widens his claims slightly by saying that the district judge had once been actively connected with political causes opposed by the Popular Democratic Party. Neither ground is expressly offered as an independent basis for recusal, and for good reason. It is common knowledge in the profession that former law clerks practice regularly before judges for whom they once clerked. Courts often have prophylactic rules that forbid a former law clerk from appearing in that court for a year or -17- -17- more after the clerkship, see, e.g., 1st Cir. R. 46, but no _________ such rule is claimed to have been violated in this case. And any lawyer who studies a judge's past rulings can make an informed guess as to how the judge is likely to approach an issue. So, too, appointees to the bench have sometimes had a former active connection with a political party. But many judges also sit, usually after a self-imposed cooling off period, on cases involving former clients (assuming always no current financial ties and that the judge did not work on the same or a related matter while in practice). Former ______ affiliations with a party may persuade a judge not to sit; but they are rarely a basis for compelled recusal. See, ____ e.g., In re United States, 666 F.2d at 696; Matter of Mason, ____ ___________________ _______________ 916 F.2d 384, 386 (7th Cir. 1990). All this being said, the whole is sometimes greater than the sum of the parts. The cumulative effect of a judge's individual actions, comments and past associations could raise some question about impartiality, even though none (taken alone) would require recusal. And, while the abuse of discretion standard is a forgiving one, perhaps in an extreme case the cumulative effect would warrant reversal on direct appeal if the judge refused to recuse.  But the primary condition of mandamus is that the petitioner be clearly entitled to relief. Judges may choose -18- -18- to step aside in close cases; the "duty to sit" concept has been modified by amended section 455. See Blizard, 601 F.2d ___ _______ at 1220-21; see also 13A Wright, Miller & Cooper 3549, at ________ 611. But mandamus requires a case not merely close to the line but clearly over it; and the line itself is especially blurred where no incident is sufficient and the claim is one of cumulative effects. This case is certainly not so clearly over the line as to justify the shortcut of mandamus. III. CONCLUSION When this case returns to the district court, section 144 will be out of the picture; Del Valle's statement was insufficient on its face to show bias or prejudice, so it fails regardless of mandamus requirements, and only one such affidavit may be filed in an action. The situation is otherwise under section 455(a); our decision, resting as it does partly upon the mandamus standard, does not automatically prevent the further development of the record, nor an appeal after a final judgment. The possibility left open may carry some suggestion of reproof. We therefore note that as yet no showing exists that the district judge gave any improper advantage in his disclosures to defense counsel, which is the closest that plaintiffs have come to a specific and serious charge. Our only present stricture is that a district judge, however -19- -19- busy, ought not let a recusal motion alleging personal bias and prejudice sit dormant for eight months. The petition for a writ of mandamus is denied. The stay ______ of proceedings in the district court is vacated. Each side _______ shall bear its own costs. It is so ordered. ________________ -20- -20-